Stephen G. Wilcox
State Bar Number 21454300
WILCOX LAW, PLLC
P.O. Box 201849
Arlington, TX 76006
(817) 870-1694 Telephone
swilcox@wilcoxlaw.net
ATTORNEY FOR TD BANK, N.A., SUCCESSOR IN INTEREST TO TD AUTO FINANCE LLC

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| DEBORAH & PAUL REED, | § | CASE NO. 24-44478-MXM-13 |
| DEBTORS. | § | |

### AFFIDAVIT

| | |
|---|---|
| **STATE OF FLORIDA** | § § |
| **COUNTY OF DUVAL** | § |

**BEFORE ME,** the undersigned authority, on this day personally appeared <u>David L Tagliaferri</u>, who being by me duly sworn, on his/her oath stated:

1. "I have knowledge of the facts stated herein set forth based on a review of the business records of TD Bank, N.A., successor in interest to TD Auto Finance LLC ("TD Bank"). I have care, custody and control of all records concerning the account of Deborah & Paul Reed"

2. "I hold the position of Bankruptcy Specialist for TD Bank, N.A., successor in interest to TD Auto Finance LLC."

3. "I have knowledge of account number ending 9575 and records related to a certain retail installment contract (the "Contract") between Paul Reed and Irvtex Automotive Sales II, LLC ("Seller")."

4. "Seller assigned its rights and interests in and to the Contract to TD Bank, N.A., successor in interest to TD Auto Finance LLC."

5. "To gain the information necessary to make this affidavit, I have reviewed the account information and file maintained by TD Bank with respect to the customer. Further, by virtue of my position with TD Bank, I am knowledgeable about the methods of document preparation by it. The documents identified as business records in this Affidavit are memorandums, reports, records, or data compilations, of acts, events, conditions, or opinions, made at or near the time, by or from information transmitted by a person with knowledge, and are kept in a course of a regularly conducted business activity of TD Bank, and it was the regular practice of that business activity to make the memorandum, report, record or data compilation."

6. "These records indicate that by virtue of the Motor Vehicle Retail Installement Sales Contract and a Certificate of Title, TD Bank is a secured creditor with a lien on a 2018 Ford F250, Vehicle Identification Number 1FT7W2BT9JEC17907 (the "Collateral"). True and correct copies of the Contract and Title are attached hereto and are incorporated herein by reference."

7. "The books and records of TD Bank indicate that the installment payments are $866.29 per month and as of December 1, 2025, the account was due for the October 15, 2025 payment and all payments due since that time. The net contractual balance owed as of December 1, 2025 was $5,204.40. The total arrears as of December 1, 2025 were $1,532.58."

8. "Attached hereto and incorporated herein by reference is a true and correct copy of the payment history as to the account."

**"FURTHER, AFFIANT SAYETH NOT."**

_____
BANKRUPTCY REPRESENTATIVE FOR TD
BANK, N.A., SUCCESSOR IN INTEREST TO
TD AUTO FINANCE LLC

SUBSCRIBED AND SWORN TO BEFORE ME on this the 1st day of December, 2025.



_____
NOTARY PUBLIC IN AND FOR THE
STATE OF FLORIDA

My Commission Expires:

10/7/28

Printed Name:

Lisa N Herring

SEAL
953-03932-620433

Page 2

# MOTOR VEHICLE RETAIL INSTALLMENT SALES CONTRACT – SIMPLE FINANCE CHARGE
## (WITH ARBITRATION PROVISION)

Dealer Number __KQ0LM / 19364__   Contract Number _____

| | |
|---|---|
| BUYER PAUL ERVIN REED | SELLER/CREDITOR IRVTEX AUTOMOTIVE SALES II, LLC |
| ADDRESS 4045 LAZY RIVER RANCH RD | ADDRESS 801 WEST AIRPORT FREEWAY |
| CITY Roanoke    STATE TX    ZIP 76262 | CITY IRVING    STATE TX    ZIP 75062 |
| PHONE | PHONE (972) 659-0333 |

| |
|---|
| CO-BUYER N/A |
| ADDRESS N/A |
| CITY N/A    STATE N/A    ZIP N/A |
| PHONE N/A |

The Buyer is referred to as "you" or "your." The Seller is referred to as "we" or "us." This contract may be transferred by the Seller.

**PROMISE TO PAY:** The credit price is shown below as the "Total Sales Price." The "Cash Price" is also shown in the Itemization of Amount Financed. By signing this contract, you choose to purchase the vehicle on credit according to the terms of this contract. You agree to pay us the Amount Financed, Finance Charge, and any other charges in this contract. You agree to make payments in U.S. funds according to the Payment Schedule in this contract. If more than one person signs as a buyer, you agree to keep all the promises in this agreement even if the others do not.

You have thoroughly inspected, accepted, and approved the vehicle in all respects.

## VEHICLE IDENTIFICATION

| YEAR | MAKE | MODEL | VEHICLE IDENTIFICATION NUMBER | | USE FOR WHICH PURCHASED |
|---|---|---|---|---|---|
| 2018 | Ford | Super Duty F-250 SRW | 1FT7W2BT9JEC17907 | ☒ NEW<br>☐ DEMONSTRATOR<br>☐ FACTORY OFFICIAL/EXECUTIVE<br>☐ USED | PERSONAL, FAMILY, OR HOUSEHOLD, UNLESS OTHERWISE INDICATED BELOW<br>If either of the boxes below is checked, Chapter 353 of the Texas Finance Code applies to this Contract.<br>☐ BUSINESS OR COMMERCIAL<br>☐ AGRICULTURAL   ☐ _N/A_ |

Trade-in: Make  Ford                    Model F-150
Year  2016   VIN 1FTEW1EP4GKE41564      License No.

| FEDERAL TRUTH-IN-LENDING DISCLOSURES | | | | | SELLER'S DISCLAIMER OF WARRANTIES |
|---|---|---|---|---|---|
| **ANNUAL PERCENTAGE RATE**<br>The cost of your credit as a yearly rate. | **FINANCE CHARGE**<br>The dollar amount the credit will cost you. | **Amount Financed**<br>The amount of credit provided to you or on your behalf. | **Total of Payments**<br>The amount you will have paid after you have made all payments as scheduled. | **Total Sale Price**<br>The total cost of your purchase on credit, including your down payment of $ 0.00 | Unless the seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.<br>This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide. |
| 6.44 % | $ 14,472.36 | $ 58,296.00 | $ 72,768.36 | $ 72,768.36 | |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 84 | $ 866.29 | Monthly beginning 08/03/2018 |
| N/A | N/A | N/A |

Or as follows
N/A

**Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.
**Spanish Translation:** Guía para compradors de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

**Late Charge:** If we do not receive your entire payment within _15_ days after it is due (10 days if you are buying a heavy commercial vehicle), you will pay a late charge of _5%_ of the scheduled payment.
**Prepayment.** If you pay early, you will not have to pay a penalty.
**Security Interest.** We will have a security interest in the vehicle being purchased.
**Additional Information:** See this document for more information about nonpayment, default, security interests, and any required repayment in full before the scheduled date.

**APPLICABLE LAW**
Federal and Texas law apply to this contract.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

This PROVISION applies to this contract only if the vehicle financed in the contract was purchased for personal, family, or household use.

## ITEMIZATION OF AMOUNT FINANCED

1. Cash Price (including any accessories, services, taxes,
   N/A $ N/A, N/A $ N/A,
   Sales Tax $ 1,325.79 and N/A $ N/A ) $ 52,115.79 (1)

2. Total Downpayment = (if negative, enter "0" and see Line 4A below)
   - Gross Trade-In .................................................... $ 27,577.34
   - − Pay Off Made By Seller ..................................... $ 29,725.00
   - − Cash Paid to Buyer for Trade-In ......................... $ N/A
   - = Net Trade-In ..................................................... $ -2,147.66
   - + Cash ................................................................. $ N/A
   - + Mfrs. Rebate .................................................... $ 2,000.00
   - + Other (describe) N/A ........................................ $ N/A
   - + Other (describe) N/A ........................................ $ N/A
   - + Other (describe) N/A ........................................ $ N/A
   - + Other (describe) Trade-In Credit Agreement Benefit $ N/A
   - Total Downpayment ............................................. $ 0.00 (2)

3. Unpaid Balance of Cash Price (1 minus 2) ............ $ 52,115.79 (3)

4. Other Charges Including Amounts Paid to Others on Your Behalf
   (Seller may keep part of these amounts.):
   - A Net trade-in payoff to AMERICREDIT FINANCIAL $ 147.66
   - B Cost of Optional Credit Insurance Paid to Insurance Company or Companies.
     - Life $ N/A
     - Disability $ N/A    $ N/A
   - C Other Optional Insurance Paid to Insurance Company or Companies $ N/A
   - D Official Fees Paid to Government Agencies
     - 1) to DENTON COUNTY for RoadandBridgeFee $ 20.00
     - 2) to STATE OF TEXAS for PROC AND HANDLING $ 4.75
     - 3) to N/A for N/A $ N/A
   - E Debt Cancellation Agreement Fee Paid to the Seller $ 895.00
   - F Dealer's Inventory Tax (if Not Included in Cash Price) $ 109.05
   - G Sales Tax (if Not Included in Cash Price) $ N/A
   - H Other Taxes (if Not Included in Cash Price) $ N/A
   - I Government License and/or Registration Fees
     - License Fee $ 112.00
   - J Government Certificate of Title Fees $ 33.00
   - K Government Vehicle Inspection Fees $ 23.75
   - L Deputy Service Fee Paid to Dealer $ N/A
   - M Documentary Fee (Cargo Documental) $ 150.00

   A DOCUMENTARY FEE IS NOT AN OFFICIAL FEE. A DOCUMENTARY FEE IS NOT REQUIRED BY LAW, BUT MAY BE CHARGED TO BUYERS FOR HANDLING DOCUMENTS RELATING TO THE SALE. A DOCUMENTARY FEE MAY NOT EXCEED A REASONABLE AMOUNT AGREED TO BY THE PARTIES. THIS NOTICE IS REQUIRED BY LAW.

   UN CARGO DOCUMENTAL NO ES UN CARGO OFICIAL. LA LEY NO EXIGE QUE SE IMPONGA UN CARGO DOCUMENTAL. PERO ÉSTE PODRÍA COBRARSE A LOS COMPRADORES POR EL MANEJO DE LA DOCUMENTACIÓN EN RELACIÓN CON LA VENTA. UN CARGO DOCUMENTAL NO PUEDE EXCEDER UNA CANTIDAD RAZONABLE ACORDADA POR LAS PARTES. ESTA NOTIFICACIÓN SE EXIGE POR LEY.

   - N Other Charges (Seller must identify who is paid and describe purpose.)
     - to State for Plate Transfer Fee $ N/A
     - to Seller for Trade-In Credit Agreement $ N/A
     - to MPP for Service Contract $ 4,680.00
     - to STATE OF TEXAS for Filing Fee $ 5.00
     - to N/A for N/A $ N/A
     - to N/A for N/A $ N/A
     - to N/A for N/A $ N/A
     - to N/A for N/A $ N/A
     - to N/A for N/A $ N/A
     - to N/A for N/A $ N/A
     - to N/A for N/A $ N/A
     - to N/A for N/A $ N/A
   - Total Other Charges and Amounts Paid to Others on Your Behalf $ 6,180.21 (4)

5. Amount Financed (3 + 4) $ 58,296.00 (5)

---

**LIABILITY INSURANCE:** THIS CONTRACT DOES NOT INCLUDE INSURANCE COVERAGE FOR PERSONAL LIABILITY AND PROPERTY DAMAGE CAUSED TO OTHERS.

**LEGAL LIMITATIONS ON OUR RIGHTS**
If we don't enforce our rights every time, we can still enforce them later. We will exercise all of our rights in a lawful way. You don't have to pay finance charge or other amounts that are more than the law allows. This provision prevails over all other parts of this contract and over all our other acts.

**SERVICING AND COLLECTION CONTACTS**
We may try to contact you at any mailing address, e-mail address, or phone number you give us as the law allows. We may try to contact you in writing (including mail, e-mail, and text messages) and by phone (including prerecorded or artificial voice messages and automatic telephone dialing systems).

**Returned Check Charge:** You agree to pay a charge of $ 30 if any check you give us is dishonored or any electronic payment is returned unpaid.

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on page 6 of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Buyer Signs X A [signature]
Co-Buyer Signs X A N/A

True and Accurate Completed Copy - UCC Non-Authoritative Copy
True and Accurate Completed Copy - UCC Non-Authoritative Copy

This is a Copy of the Customer Completed signed electronic form held by RouteOne LLC.

**PROPERTY INSURANCE.** You must keep the collateral insured against damage or loss in the amount you owe. You must keep this insurance until you have paid all that you owe under this contract. You may obtain property insurance from anyone you want or provide proof of insurance you already have. The insurer must be authorized to do business in Texas. You agree to give us proof of property insurance. You must name us as the person to be paid under the policy in the event of damage or loss.

If any insurance is checked below, policies or certificates from the insurance companies will describe the terms, conditions, and deductibles.

### Optional Credit
### Life and Credit Disability Insurance

Credit life insurance and credit disability insurance are not required to obtain credit. They will not be provided unless you sign and agree to pay the extra cost. Your decision to buy or not buy these insurance coverages will not be a factor in the credit approval process.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☐ Credit Life, one buyer | $ | N/A | Term | N/A | ☐ Credit Disability, one buyer | $ N/A Term | N/A |
| ☐ Credit Life, both buyers | $ | N/A | Term | N/A | ☐ Credit Disability, both buyers | $ N/A Term | N/A |

N/A
_____
(Insurance Company)

N/A
_____
(Home Office Address)

Credit life insurance pays only the amount you would owe if you paid all your payments on time. Credit disability insurance does not cover any increase in your payment or in the number of payments. If the term of the insurance is 121 months or longer, the premium is not fixed or approved by the Texas Insurance Commissioner.

**You want the insurance indicated above.**

| x **B** | **N/A** | N/A | x **B** | **N/A** | N/A |
|---|---|---|---|---|---|
| Buyer's signature | | Date | Co-Buyer's signature | | Date |

### Optional Insurance Coverages and Debt Cancellation Agreement

The granting of credit will not be dependent on the purchase of either the insurance coverages or the debt cancellation agreement described below. It will not be provided unless you sign and agree to pay the extra cost. The credit approval process will not be affected by whether or not you buy these insurance coverages or the debt cancellation agreement.

| Coverage | Term in Months | | Premium or Fee |
|---|---|---|---|
| GAP* | N/A | ☐ | $ N/A |
| N/A | N/A | ☐ | $ N/A |
| N/A | N/A | ☐ | $ N/A |
| Debt Cancellation Agreement** | 75 | | $ 895.00 |

MPP
_____

N/A
_____
(Insurance Company)

_____
(Home Office Address)

*If the vehicle is determined to be a total loss, GAP insurance will pay us the difference between the proceeds of your basic collision policy and the amount you owe on the vehicle, minus your deductible. You can cancel that insurance without charge for 10 days from the date of this contract.

**WE WILL CANCEL CERTAIN AMOUNTS YOU OWE UNDER THIS CONTRACT IN THE CASE OF A TOTAL LOSS OR THEFT OF THE VEHICLE AS STATED IN THE DEBT CANCELLATION AGREEMENT. You can cancel the debt cancellation agreement without charge for a period of 30 days from the date of this contract, or for the period stated in the debt cancellation agreement, whichever period ends later.

If the box next to a premium for an insurance coverage included above is marked, that premium is not fixed or approved by the Texas Insurance Commissioner. A debt cancellation agreement is not insurance and is regulated by the Office of the Consumer Credit Commissioner.

For the premiums or fees included above, you want the related optional coverages and debt cancellation agreement.

| x**C** [signature] | 06/19/2018 | x**C** **N/A** | N/A |
|---|---|---|---|
| Buyer's signature | Date | Co-Buyer's signature | Date |

## OTHER TERMS AND CONDITIONS

**1. FINANCE CHARGE AND PAYMENTS**

   **a. HOW WE FIGURE THE FINANCE CHARGE.** We figure the Finance Charge using the true daily earnings method as defined by the Texas Finance Code. Under the true daily earnings method, the Finance Charge will be figured by applying the daily rate to the unpaid portion of the Amount Financed for the number of days the unpaid portion of the Amount Financed is outstanding. The daily rate is 1/365th of the Annual Percentage Rate. The unpaid portion of the Amount Financed does not include late charges or return check charges.

   **b. HOW WE WILL APPLY YOUR PAYMENTS.** We will apply your payments in the following order:
   1. earned but unpaid finance charge; and
   2. to anything else you owe under this agreement.

   **c. HOW LATE OR EARLY PAYMENTS CHANGE WHAT YOU MUST PAY.** We based the Finance Charge, Total of Payments, and Total Sale Price as if all payments were made as scheduled. If you do not timely make all your payments in at least the correct amount, you will have to pay more Finance Charge. If that happens, your last payment will be more than your final scheduled payment, or at our option, you will have to pay more payments of the same amount as your scheduled payment with a smaller last payment. If you make scheduled payments early, your Finance Charge will be reduced (less). If you make your scheduled payments late, your Finance Charge will increase. We will send you a notice telling you about these changes before the final scheduled payment is due.

d. **TRANSFER OF RIGHTS.** We may transfer this contract to another person. That person will then have all our rights, privileges, and remedies.

e. **SPECIAL PROVISIONS FOR BALLOON PAYMENT CONTRACTS.** A balloon payment is a scheduled payment more than twice the amount of the average of your scheduled payments, other than the downpayment, that are due before the balloon payment. You can pay all you owe when the balloon payment is due and keep your vehicle. If you buy the vehicle primarily for personal, family, or household use, you can enter into a new written agreement to refinance the balloon payment when due without a refinancing fee. If you refinance the balloon payment, your periodic payments will not be larger or more often than the payments in this contract. The annual percentage rate in the new agreement will not be more than the Annual Percentage Rate in this contract. This provision does not apply if your Payment Schedule has been adjusted to your seasonal or irregular income.

2. **YOUR OTHER PROMISES TO US**
   a. **USE AND TRANSFER OF THE VEHICLE.** You will not sell or transfer the vehicle without our written permission. If you do sell or transfer the vehicle, this will not release you from your obligations under this contract, and we may charge you a transfer of equity fee of $25.00 ($50 for a heavy commercial vehicle). You will promptly tell us in writing if you change your address or the address where you keep the vehicle. We agree you may remove the vehicle from the U.S. for 72 hours or less, if the vehicle will continue to be covered by the insurance this contract requires. Otherwise, you agree not to remove the vehicle from the U.S. without our written permission.
   b. **CARE OF THE VEHICLE.** You agree to keep the vehicle free from all liens, and claims except those that secure this contract. You will timely pay all taxes, fines, or charges pertaining to the vehicle. You will keep the vehicle in good repair. You will not allow the vehicle to be seized or placed in jeopardy or use it illegally. You must pay all you owe even if the vehicle is lost, damaged or destroyed. If a third party takes a lien or claim against or possession of the vehicle, we may pay the third party any cost required to free the vehicle from all liens or claims. We may immediately demand that you pay us the amount paid to the third party for the vehicle. If you do not pay this amount, we may repossess the vehicle and add that amount to the amount you owe. If we do not repossess the vehicle, we may still demand that you pay us, but we cannot compute a finance charge on this amount.
   c. **SECURITY INTEREST.** To secure all that you owe on this contract and all your promises in it, you give us a security interest in:
      1. The vehicle including all accessories and parts now or later attached and any other goods financed in this contract;
      2. All insurance proceeds and other proceeds received for the vehicle;
      3. Any insurance policy, service contract or other contract financed by us and any proceeds of those contracts; and
      4. Any refunds of charges included in this contract for insurance, or service contracts.
   
   This security interest also secures any extension or modification of this contract. The certificate of title must show our security interest in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.
   d. **AGREEMENT TO KEEP VEHICLE INSURED.** You agree to have physical damage insurance covering loss or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. The insurer must be authorized to do business in Texas.
   e. **OUR RIGHT TO PURCHASE REQUIRED INSURANCE IF YOU FAIL TO KEEP THE VEHICLE INSURED.** If you fail to give us proof that you have insurance, we may buy physical damage insurance. We may buy insurance that covers your interest and our interest in the vehicle, or we may buy insurance that covers our interest only. You will pay the premium for the insurance and a finance charge at the contract rate. If we obtain collateral protection insurance, we will mail notice to your last known address shown in our file.
   f. **PHYSICAL DAMAGE INSURANCE PROCEEDS.** You must use physical damage insurance proceeds to repair the vehicle, unless we agree otherwise in writing. However, if the vehicle is a total loss, you must use the insurance proceeds to pay what you owe us. You agree that we can use any proceeds from insurance to repair the vehicle, or we may reduce what you owe under this contract. If we apply insurance proceeds to the amount you owe, they will be applied to your payments in the reverse order of when they are due. If your insurance on the vehicle or credit insurance doesn't pay all you owe, you must pay what is still owed. Once all amounts owed under this contract are paid, any remaining proceeds will be paid to you.
   g. **RETURNED INSURANCE PREMIUMS AND SERVICE CONTRACT CHARGES.** If we get a refund on insurance or service contracts, or other contracts included in the cash price, we will subtract it from what you owe. Once all amounts owed under this contract are paid, any remaining refunds will be paid to you.
   h. **APPLICATION OF CREDITS.** Any credit that reduces your debt will apply to your payments in the reverse order of when they are due, unless we decide to apply it to another part of your debt. The amount of the credit and all finance charge or interest on the credit will be applied to your payments in the reverse order of your payments.

3. **IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**
   a. **LATE CHARGE.** You will pay us a late charge as agreed to in this contract when it accrues.
   b. **DEFAULT.** You will be in default if:
      1. You do not pay any amount when it is due;
      2. You give false, incomplete, or misleading information on a credit application;
      3. You file bankruptcy, bankruptcy is filed against you, or the vehicle becomes involved in a bankruptcy.
      4. You allow a judgment to be entered against you or the collateral; or
      5. You break any of your promises in this agreement.
   
   If you default, we can exercise our rights under this contract and our other rights under the law.
   c. **OUR RIGHT TO DEMAND PAYMENT IN FULL.** If you default, or we believe in good faith that you are not going to keep any of your promises, we can demand that you immediately pay all that you owe. We don't have to give you notice that we are demanding or intend to demand immediate payment of all that you owe.
   d. **REPOSSESSION.** If you default, we may repossess the vehicle from you if we do so peacefully. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If any personal items are in the vehicle, we can store them for you and give you written notice at your last known address shown on our records within 15 days of discovering that we have your personal items. If you do not ask for these items back within 31 days from the day we mail or deliver the notice to you, we may dispose of them as applicable law allows. Any accessory, equipment, or replacement part stays with the vehicle.

e. **YOUR RIGHT TO REDEEM.** If we take your vehicle, we will tell you how much you have to pay to get it back. If you do not pay us to get the vehicle back, we can sell it or take other action allowed by law. Your right to redeem ends when the vehicle is sold or we have entered into a contract for sale or accepted the collateral as full or partial satisfaction of a contract.

f. **DISPOSITION OF THE VEHICLE.** If you don't pay us to get the vehicle back, we can sell it or take other action allowed by law. If we sell the motor vehicle in a public or private sale, we will send you notice at least 10 days before we sell it. We can use the money we get from selling it to pay allowed expenses and to reduce the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. If any money is left, we will pay it to you unless we must pay it to someone else. If the money from the sale is not enough to pay all you owe, you must pay the rest of what you owe us plus interest. If we take or sell the vehicle, you will give us the certificate of title and any other document required by state law to record transfer of title.

g. **COLLECTION COSTS.** If we hire an attorney who is not our employee to enforce this contract, you will pay reasonable attorney's fees and court costs as the applicable law allows. You will also pay our reasonable out-of-pocket expenses incurred in connection with retaking, holding, and selling the vehicle as the applicable law allows.

h. **CANCELLATION OF OPTIONAL INSURANCE AND SERVICE CONTRACTS.** This contract may contain charges for insurance or service contracts or for services included in the cash price. If you default, you agree that we can claim benefits under these contracts to the extent allowable, and terminate them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is damaged or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

4. **INTEGRATION AND SEVERABILITY CLAUSE**
This contract contains the entire agreement between you and us relating to the sale and financing of the vehicle. If any part of this contract is not valid, all other parts stay valid.

**Electronic Contracting and Signature Acknowledgment.** You agree that (i) this contract is an electronic contract executed by you using your electronic signature, (ii) your electronic signature signifies your intent to enter into this contract and that this contract be legally valid and enforceable in accordance with its terms to the same extent as if you had executed this contract using your written signature and (iii) the authoritative copy of this contract ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by us for the storage of authoritative copies of electronic records, which shall be deemed held by us in the ordinary course of business. Notwithstanding the foregoing, if the Authoritative Copy is converted by printing a paper copy which is marked by us as the original (the "Paper Contract"), then you acknowledge and agree that (1) your signing of this contract with your electronic signature also constitutes issuance and delivery of such Paper Contract, (2) your electronic signature associated with this contract, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract and (3) subsequent to such conversion, your obligations will be evidenced by the Paper Contract alone.

---

**OCCC NOTICE.** For questions or complaints about this contract, contact _____TD Auto Finance LLC_____ at _____800-556-8172_____. The Office of Consumer Credit Commissioner (OCCC) is a state agency, and it enforces certain laws that apply to this contract. If a complaint or question cannot be resolved by contacting the creditor, consumers can contact the OCCC to file a complaint or ask a general credit-related question. OCCC address: 2601 N. Lamar Blvd., Austin, Texas 78705. Phone: (800) 538-1579. Fax: (512) 936-7610. Website: occc.texas.gov. E-mail: consumer.complaints@occc.texas.gov.

---

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

---

Any change to this contract must be in writing. Both you and we must sign it. No oral changes to this contract are enforceable.

Buyer x D [signature] _____    Co-Buyer x D _____ N/A _____

See the rest of this contract for other important agreements.

**CONSUMER WARNING:** Notice to the buyer--Do not sign this contract before you read it or if it contains any blank spaces. You are entitled to a copy of the contract you sign. Under the law, you have the right to pay off in advance all that you owe and under certain conditions may save a portion of the finance charge. You will keep this contract to protect your legal rights.

**BUYER'S ACKNOWLEDGEMENT OF CONTRACT RECEIPT:** YOU AGREE TO THE TERMS OF THIS CONTRACT AND ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF IT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS CONTRACT, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT. YOU ACKNOWLEDGE THAT YOU HAVE READ ALL PAGES OF THIS CONTRACT, INCLUDING THE ARBITRATION PROVISION ON PAGE 6, BEFORE SIGNING BELOW.

Buyer Signs x E [signature] _____ Date 06/19/2018   Co-Buyer Signs x E _____ N/A _____ Date ___N/A___

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here X ___N/A___ Date ___N/A___ Address _____N/A_____
Seller signs ___IRVTEX AUTOMOTIVE SALES II, LLC___ Date 06/19/2018 By x E [mark] _____ Title FINANCE AI

THIS CONTRACT IS NOT VALID UNTIL YOU AND WE SIGN IT.

*LAW 553-TX-ARB-ea 4/18 v1    Page 5 of 6*

T201082310-DP201082313 - This copy was created on Thu Jun 21 02:46:17 GMT 2018

This is a Copy of the Customer Completed signed electronic form held by RouteOne LLC.

## ARBITRATION PROVISION

### PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the American Arbitration Association, 1633 Broadway, 10th Floor, New York, New York 10019 (www.adr.org), or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $5000, unless the law or the rules of the chosen arbitration organization require us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.

| Seller assigns its interest in this contract to | TD Auto Finance LLC | (Assignee) under the terms of Seller's agreement(s) with Assignee. |
|---|---|---|
| ☐ Assigned with recourse | ☒ Assigned without recourse | ☐ Assigned with limited recourse |

Seller IRVTEX AUTOMOTIVE SALES II, LLC    By F    Title FINANCE ADMIN

LAW FORM NO. 553-TX-ARB-ea 4/18
©2018 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR
FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

LAW 553-TX-ARB-ea 4/18 v1    Page 6 of 6

T201082310-DP201082313 - This copy was created on Thu Jun 21 02:46:17 GMT 2018

Upon sale of this vehicle, the purchaser must apply for a new title within 30 days unless the vehicle is purchased by a dealer. Until a new title is issued, the vehicle record will continue to reflect the owner's name listed on the current title. SEE BACK OF TAB FOR ADDITIONAL INFORMATION.



TD AUTO FINANCE LLC
PO BOX 675
WILMINGTON, OH 45177-0675

0023030

▼ DETACH HERE ▼

# TEXAS CERTIFICATE OF TITLE

TxDMV

TEXAS DEPARTMENT OF MOTOR VEHICLES

14112505L

| VEHICLE IDENTIFICATION NUMBER | YEAR MODEL | MAKE OF VEHICLE | BODY STYLE |
|---|---|---|---|
| 1FT7W2BT9JEC17907 | 2018 | FORD | PK |

TITLE/DOCUMENT NUMBER: 05731543289250182
DATE TITLE ISSUED: 07/18/2018

| MODEL | MFG CAPACITY IN TONS | WEIGHT | LICENSE NUMBER |
|---|---|---|---|
| F25 | | 7100 | |

PREVIOUS OWNER
WESTWAY FORD IRVING TX

ODOMETER READING: 14
REMARK(S): ACTUAL MILEAGE

OWNER
PAUL ERVIN REED
4045 LAZY RIVER RANCH RD
ROANOKE, TX 76262

X _____
SIGNATURE OF OWNER OR AGENT MUST BE IN INK

UNLESS OTHERWISE AUTHORIZED BY LAW, IT IS A VIOLATION OF STATE LAW TO SIGN THE NAME OF ANOTHER PERSON ON A CERTIFICATE OF TITLE OR OTHERWISE GIVE FALSE INFORMATION ON A CERTIFICATE OF TITLE

DATE OF LIEN: 06/19/2018
1ST LIENHOLDER: TD AUTO FINANCE LLC
PO BOX 675
WILMINGTON, OH 45177-0675

1ST LIEN RELEASED _____ DATE
BY _____ AUTHORIZED AGENT

DATE OF LIEN: 2ND LIENHOLDER:

2ND LIEN RELEASED _____ DATE
BY _____ AUTHORIZED AGENT

DATE OF LIEN: 3RD LIENHOLDER:

3RD LIEN RELEASED _____ DATE
BY _____ AUTHORIZED AGENT

IT IS HEREBY CERTIFIED THAT THE PERSON HEREIN NAMED IS THE OWNER OF THE VEHICLE DESCRIBED ABOVE WHICH IS SUBJECT TO THE ABOVE LIENS

RIGHTS OF SURVIVORSHIP AGREEMENT
WE, THE MARRIED PERSONS, WHOSE SIGNATURES APPEAR HEREIN, HEREBY AGREE THAT THE OWNERSHIP OF THE VEHICLE DESCRIBED ON THIS CERTIFICATE OF TITLE SHALL FROM THIS DAY FORWARD BE HELD JOINTLY, AND IN THE EVENT OF DEATH OF ANY OF THE PERSONS NAMED IN THE AGREEMENT, THE OWNERSHIP OF THE VEHICLE SHALL VEST IN THE SURVIVOR(S)

SIGNATURE _____ DATE
SIGNATURE _____ DATE
SIGNATURE _____ DATE

FORM 30-C REV 05/2016      DO NOT ACCEPT TITLE SHOWING ERASURE, ALTERATION, OR MUTILATION

# TD

**Account History**
**as of**
**Dec 1, 2025**

**Account:** 9575

| Vehicle: | 18 FORD |
|---|---|
| VIN: | 1FT7W2BT9JEC17907 |

| Total # of Payments Delinquent | | |
|---|---|---|
| 30 Days | 60 Days | 90+ Days |
| 12 | 5 | 0 |

| Next Pymt Due | Amount Due | Fees Due | Fees Paid |
|---|---|---|---|
| 10/15/25 | 1,532.58 | 0.00 | 779.58 |

| | |
|---|---|
| Type of Financing: | Simple Interest |
| Contract Date | 06/19/2018 |
| Maturity Date | 01/15/2026 |
| 1st Payment Date | 08/03/2018 |
| Term: 91   APR: | 06.4400 |
| Extensions | 6 |
| Total of Payments: | 72,768.36 |
| Estimated Finance Charge | 14,472.36 |
| Service Contract | 4,680.00 |
| A&H Insurance | 0.00 |
| Credit Life Insurance | 0.00 |
| GAP Insurance | 895.00 |

PAUL E REED
120 SADDLE RIDGE DR
GODLEY            TX            76044-3878

**This is a Simple Interest Account.  Finance Charge and the Total of Payments is Estimated, based on the assumption that all payments will be paid on each Scheduled Due Date.**

**If an asterisk (*) appears before a Transaction Description, the Transaction is only for Internal Accounting Purposes.**

![TD Logo]

Account History
as of
Dec 1, 2025

Account:                    9575

| Date | Description | Amount | Principal | Finance Charge | Principal Balance |
|---|---|---|---|---|---|
| 10-16-2020 | REGULAR PAYMENT | 866.29 | 619.82 | 246.47 | 46,071.93 |
| 11-23-2020 | REGULAR PAYMENT | 866.29 | 558.24 | 308.05 | 45,513.69 |
| 12-18-2020 | REGULAR PAYMENT | 866.29 | 666.08 | 200.21 | 44,847.61 |
| 02-01-2021 | LATE CHARGE ASSESSED | -43.31 | 0.00 | 0.00 | 44,847.61 |
| 02-02-2021 | REGULAR PAYMENT | 866.29 | 502.60 | 363.69 | 44,345.01 |
| 03-03-2021 | LATE CHARGE ASSESSED | -43.31 | 0.00 | 0.00 | 44,345.01 |
| 03-04-2021 | REGULAR PAYMENT | 909.60 | 631.57 | 234.72 | 43,713.44 |
| 03-25-2021 | REGULAR PAYMENT | 909.60 | 704.32 | 161.97 | 43,009.12 |
| 04-20-2021 | REGULAR PAYMENT | 866.29 | 668.99 | 197.30 | 42,340.13 |
| 05-19-2021 | REGULAR PAYMENT | 866.29 | 649.65 | 216.64 | 41,690.48 |
| 06-21-2021 | REGULAR PAYMENT | 866.29 | 623.55 | 242.74 | 41,066.93 |
| 07-27-2021 | REGULAR PAYMENT | 866.29 | 605.44 | 260.85 | 40,461.49 |
| 08-27-2021 | REGULAR PAYMENT | 866.29 | 644.98 | 221.31 | 39,816.51 |
| 09-30-2021 | REGULAR PAYMENT | 866.29 | 627.44 | 238.85 | 39,189.07 |
| 10-18-2021 | REGULAR PAYMENT | 866.29 | 741.83 | 124.46 | 38,447.24 |
| 12-01-2021 | LATE CHARGE ASSESSED | -43.31 | 0.00 | 0.00 | 38,447.24 |
| 12-06-2021 | REGULAR PAYMENT | 909.60 | 533.89 | 332.40 | 37,913.35 |
| 12-28-2021 | REGULAR PAYMENT | 866.29 | 719.13 | 147.16 | 37,194.22 |
| 01-31-2022 | REGULAR PAYMENT | 866.29 | 643.16 | 223.13 | 36,551.06 |
| 02-25-2022 | REGULAR PAYMENT | 866.29 | 705.07 | 161.22 | 35,845.99 |
| 03-25-2022 | REGULAR PAYMENT | 866.29 | 689.20 | 177.09 | 35,156.79 |
| 05-02-2022 | REGULAR PAYMENT | 866.29 | 630.57 | 235.72 | 34,526.22 |
| 05-23-2022 | REGULAR PAYMENT | 127.93 | 0.00 | 127.93 | 34,526.22 |
| 05-23-2022 | FINANCE CHARGE ADJUSTED | -4.43 | 0.00 | -4.43 | 34,526.22 |
| 05-23-2022 | FINANCE CHARGE ADJUSTED | -123.50 | 0.00 | -123.50 | 34,526.22 |
| 05-23-2022 | * EXTENSION | 0.00 | 0.00 | 0.00 | 34,526.22 |
| 07-01-2022 | REGULAR PAYMENT | 909.60 | 672.03 | 237.57 | 33,854.19 |
| 07-26-2022 | REGULAR PAYMENT | 822.98 | 673.65 | 149.33 | 33,180.54 |
| 08-19-2022 | REGULAR PAYMENT | 866.29 | 725.79 | 140.50 | 32,454.75 |
| 09-19-2022 | REGULAR PAYMENT | 866.29 | 688.77 | 177.52 | 31,765.98 |
| 10-21-2022 | REGULAR PAYMENT | 866.29 | 686.93 | 179.36 | 31,079.05 |
| 11-22-2022 | REGULAR PAYMENT | 866.29 | 690.82 | 175.47 | 30,388.23 |
| 12-23-2022 | REGULAR PAYMENT | 866.29 | 700.09 | 166.20 | 29,688.14 |
| 01-30-2023 | REGULAR PAYMENT | 866.29 | 667.24 | 199.05 | 29,020.90 |
| 03-03-2023 | LATE CHARGE ASSESSED | -43.31 | 0.00 | 0.00 | 29,020.90 |
| 03-13-2023 | REGULAR PAYMENT | 909.60 | 651.22 | 215.07 | 28,369.68 |
| 03-31-2023 | LATE CHARGE ASSESSED | -43.31 | 0.00 | 0.00 | 28,369.68 |
| 04-07-2023 | REGULAR PAYMENT | 909.60 | 741.16 | 125.13 | 27,628.52 |
| 05-01-2023 | LATE CHARGE ASSESSED | -43.31 | 0.00 | 0.00 | 27,628.52 |
| 05-10-2023 | REGULAR PAYMENT | 909.60 | 705.43 | 160.86 | 26,923.09 |
| 05-31-2023 | LATE CHARGE ASSESSED | -43.31 | 0.00 | 0.00 | 26,923.09 |
| 06-01-2023 | REGULAR PAYMENT | 104.51 | 0.00 | 104.51 | 26,923.09 |

**If an asterisk (*) appears before a Transaction Description, the Transaction is only for Internal Accounting Purposes.**

# TD

**Account History**
as of
**Dec 1, 2025**

Account: 9575

| Date | Description | Amount | Principal | Finance Charge | Principal Balance |
|---|---|---|---|---|---|
| 06-01-2023 | FINANCE CHARGE ADJUSTED | -3.62 | 0.00 | -3.62 | 26,923.09 |
| 06-01-2023 | FINANCE CHARGE ADJUSTED | -100.89 | 0.00 | -100.89 | 26,923.09 |
| 06-01-2023 | * EXTENSION | 0.00 | 0.00 | 0.00 | 26,923.09 |
| 06-01-2023 | LATE CHARGE ADJUSTED | 43.31 | 0.00 | 0.00 | 26,923.09 |
| 07-03-2023 | LATE CHARGE ASSESSED | -43.31 | 0.00 | 0.00 | 26,923.09 |
| 07-17-2023 | REGULAR PAYMENT | 910.00 | 691.49 | 218.51 | 26,231.60 |
| 07-31-2023 | LATE CHARGE ASSESSED | -43.31 | 0.00 | 0.00 | 26,231.60 |
| 08-22-2023 | REGULAR PAYMENT | 800.00 | 633.38 | 166.62 | 25,598.22 |
| 08-31-2023 | LATE CHARGE ASSESSED | -43.31 | 0.00 | 0.00 | 25,598.22 |
| 09-11-2023 | REGULAR PAYMENT | 151.93 | 61.60 | 90.33 | 25,536.62 |
| 10-02-2023 | LATE CHARGE ASSESSED | -43.31 | 0.00 | 0.00 | 25,536.62 |
| 10-10-2023 | REGULAR PAYMENT | 500.00 | 369.34 | 130.66 | 25,167.28 |
| 10-16-2023 | REGULAR PAYMENT | 496.22 | 469.58 | 26.64 | 24,697.70 |
| 10-31-2023 | LATE CHARGE ASSESSED | -43.31 | 0.00 | 0.00 | 24,697.70 |
| 11-06-2023 | REGULAR PAYMENT | 300.00 | 208.48 | 91.52 | 24,489.22 |
| 11-13-2023 | REGULAR PAYMENT | 300.00 | 269.75 | 30.25 | 24,219.47 |
| 11-27-2023 | REGULAR PAYMENT | 300.00 | 240.18 | 59.82 | 23,979.29 |
| 12-01-2023 | LATE CHARGE ASSESSED | -43.31 | 0.00 | 0.00 | 23,979.29 |
| 12-11-2023 | REGULAR PAYMENT | 500.00 | 440.77 | 59.23 | 23,538.52 |
| 01-02-2024 | LATE CHARGE ASSESSED | -43.31 | 0.00 | 0.00 | 23,538.52 |
| 01-05-2024 | REGULAR PAYMENT | 300.00 | 196.22 | 103.78 | 23,342.30 |
| 01-19-2024 | REGULAR PAYMENT | 500.00 | 442.50 | 57.50 | 22,899.80 |
| 01-30-2024 | REGULAR PAYMENT | 400.00 | 355.68 | 44.32 | 22,544.12 |
| 01-31-2024 | LATE CHARGE ASSESSED | -43.31 | 0.00 | 0.00 | 22,544.12 |
| 02-21-2024 | REGULAR PAYMENT | 500.00 | 412.73 | 87.27 | 22,131.39 |
| 03-04-2024 | LATE CHARGE ASSESSED | -43.31 | 0.00 | 0.00 | 22,131.39 |
| 03-12-2024 | REGULAR PAYMENT | 866.29 | 788.40 | 77.89 | 21,342.99 |
| 04-01-2024 | LATE CHARGE ASSESSED | -43.31 | 0.00 | 0.00 | 21,342.99 |
| 04-02-2024 | REGULAR PAYMENT | 500.00 | 421.14 | 78.86 | 20,921.85 |
| 04-03-2024 | REGULAR PAYMENT | 366.29 | 362.60 | 3.69 | 20,559.25 |
| 05-01-2024 | LATE CHARGE ASSESSED | -43.31 | 0.00 | 0.00 | 20,559.25 |
| 05-28-2024 | REGULAR PAYMENT | 866.29 | 667.34 | 198.95 | 19,891.91 |
| 05-31-2024 | LATE CHARGE ASSESSED | -43.31 | 0.00 | 0.00 | 19,891.91 |
| 06-10-2024 | REPOSESSION ASSESSMENT | -784.81 | 0.00 | 0.00 | 19,891.91 |
| 06-11-2024 | REGULAR PAYMENT | 569.69 | 520.68 | 49.01 | 19,371.23 |
| 06-11-2024 | REGULAR PAYMENT | 2,500.00 | 2,135.06 | 0.00 | 17,236.17 |
| 06-11-2024 | RETURN CHECK/ADJUSTMENT | -2,500.00 | -2,135.06 | 0.00 | 19,371.23 |
| 06-11-2024 | LATE CHARGE ADJUSTED | 519.72 | 0.00 | 0.00 | 19,371.23 |
| 06-11-2024 | REPOSESSION PAYMENT | 784.81 | 0.00 | 0.00 | 19,371.23 |
| 06-11-2024 | REGULAR PAYMENT | 1,195.47 | 1,195.47 | 0.00 | 18,175.76 |
| 06-13-2024 | REGULAR PAYMENT | 939.59 | 933.19 | 6.40 | 17,242.57 |
| 07-16-2024 | REGULAR PAYMENT | 866.29 | 766.17 | 100.12 | 16,476.40 |

**If an asterisk (*) appears before a Transaction Description, the Transaction is only for Internal Accounting Purposes.**

**TD**

**Account History as of Dec 1, 2025**

**Account:** 9575

| Date | Description | Amount | Principal | Finance Charge | Principal Balance |
|---|---|---:|---:|---:|---:|
| 08-19-2024 | REGULAR PAYMENT | 866.29 | 767.72 | 98.57 | 15,708.68 |
| 09-23-2024 | REGULAR PAYMENT | 866.29 | 769.55 | 96.74 | 14,939.13 |
| 10-23-2024 | REGULAR PAYMENT | 866.29 | 787.43 | 78.86 | 14,151.70 |
| 12-02-2024 | LATE CHARGE ASSESSED | -43.31 | 0.00 | 0.00 | 14,151.70 |
| 12-03-2024 | REGULAR PAYMENT | 866.29 | 764.20 | 102.09 | 13,387.50 |
| 12-03-2024 | LATE CHARGE ADJUSTED | 43.31 | 0.00 | 0.00 | 13,387.50 |
| 12-30-2024 | REGULAR PAYMENT | 909.60 | 846.00 | 63.60 | 12,541.50 |
| 01-28-2025 | REGULAR PAYMENT | 910.00 | 845.84 | 64.16 | 11,695.66 |
| 03-17-2025 | REGULAR PAYMENT | 300.00 | 200.95 | 99.05 | 11,494.71 |
| 03-31-2025 | REGULAR PAYMENT | 1,435.00 | 1,406.61 | 28.39 | 10,088.10 |
| 04-24-2025 | REGULAR PAYMENT | 866.29 | 823.57 | 42.72 | 9,264.53 |
| 06-17-2025 | REGULAR PAYMENT | 500.00 | 411.72 | 88.28 | 8,852.81 |
| 07-09-2025 | REGULAR PAYMENT | 200.00 | 165.64 | 34.36 | 8,687.17 |
| 07-28-2025 | REGULAR PAYMENT | 200.00 | 170.88 | 29.12 | 8,516.29 |
| 08-06-2025 | REGULAR PAYMENT | 866.29 | 852.77 | 13.52 | 7,663.52 |
| 09-14-2025 | REGULAR PAYMENT | 866.29 | 813.55 | 52.74 | 6,849.97 |
| 10-23-2025 | REGULAR PAYMENT | 866.29 | 819.16 | 47.13 | 6,030.81 |
| 11-17-2025 | REGULAR PAYMENT | 866.29 | 839.69 | 26.60 | 5,191.12 |
| 11-17-2025 | RETURN CHECK/ADJUSTMENT | -866.29 | -839.69 | -26.60 | 6,030.81 |
| 11-20-2025 | REGULAR PAYMENT | 866.29 | 836.49 | 29.80 | 5,194.32 |

**Total Principal and Finance Charge Paid:**     41,497.43     8,870.54

**If an asterisk (*) appears before a Transaction Description, the Transaction is only for Internal Accounting Purposes.**